Richard D. McCune (SBN 132124)
rdm@mccunewright.com
David C. Wright (SBN 177468)
dcw@mccunewright.com
Steven A. Haskins (SBN 238865)
sah@mccunewright.com
Mark I. Richards (SBN 321252)
mir@mccunewright.com
Jordan I. Wispell (SBN 333635)
jiw@mccunewright.com
**McCUNE LAW GROUP,**
**McCUNE WRIGHT ARÉVALO**
**VERCOSKI KUSEL WECK BRANDT, APC**
3281 Guasti Road, Suite 100
Ontario, California 91761
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| BAILEY BENNION on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HYUNDAI MOTOR CO.; HYUNDAI MOTOR AMERICA; and Does 1 through 5, inclusive,<br><br>Defendants. | Case No.: 8:23-cv-2035<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

*Page*

I       INTRODUCTION ........................................................................................ 1

II      JURISDICTION AND VENUE ................................................................... 2

III     PARTIES .................................................................................................... 3

    A.    Plaintiff Bennion .......................................................................... 3

    B.    Defendants ..................................................................................... 4

    C.    Unknown Defendants ..................................................................... 4

IV      FACTUAL ALLEGATIONS ....................................................................... 5

    A.    The Class Vehicles Suffer from and Unreasonable Safety Defect ................. 5

    B.    Hyundai's Inadequate Safety Recalls.............................................. 7

    C.    Hyundai's Knowledge of the ABS Defect ........................................ 9

    D.    Defendants' Sales and Service Agreements with its Authorized Dealers .... 15

    E.    Hyundai's New Vehicle Limited Warranty ..................................... 16

V       TOLLING OF STATUTES OF LIMITATIONS ......................................... 17

VI      CLASS ACTION ALLEGATIONS .......................................................... 18

VII     CAUSES OF ACTION............................................................................... 20

    A.    Claims Brought on Behalf of the Nationwide Class ..................... 20

    B.    Claims Brought on Behalf of the Nevada Class ........................... 22

VIII    PRAYER FOR RELIEF ............................................................................ 26

Class Action Complaint
Case No. 8:23-cv-2035

## CLASS ACTION COMPLAINT

Plaintiff Bailey Bennion ("Plaintiff Bennion" or "Plaintiff"), on behalf of herself and a class of other similarly situated individuals, complains of and alleges the following causes of action against Defendants HYUNDAI MOTOR CO., incorporated in South Korea, and HYUNDAI MOTOR AMERICA, a California Corporation, (collectively referenced herein as "Hyundai"); AND DOES 1 THROUGH 5, inclusive, as follows:

## I    INTRODUCTION

1.    Plaintiff Bennion brings this class action on behalf of herself individually and a class of current and former owners and lessees of the following vehicles: (1) 2011-2015 MY Hyundai Elantra; (2) 2011-2015 MY Hyundai Genesis Coupe; (3) 2011-2015 MY Hyundai Sonata Hybrid; (4) 2012-2015 MY Hyundai Accent; (5) 2012-2015 MY Hyundai Azera; (6) 2012-2015 MY Veloster; (7) 2013-2015 MY Elantra Coupe; (8) 2013-2015 MY Santa Fe; (9) 2014-2015 MY Hyundai Equus; (10) 2010-2012 MY Veracruz; (11) 2010-2013 MY Hyundai Tucson; (12) 2015 MY Hyundai Tucson Fuel Cell; (13) and the 2013 MY Hyundai Santa Fe Sport(collectively, the "Class Vehicles") marketed and sold by Hyundai.[1]

2.    This action arises from a long-existing fire hazard created by a defect in the vehicles. The vehicles suffer from a defect wherein the anti-lock braking system ("ABS") hydraulic assembly unit control module can leak brake fluid and cause an electrical short, which can then start a fire, lead to a loss of braking power, or misapplication of the brakes. This lawsuit addresses the underlying root cause of the leaks (the "ABS Defect"), which Defendants have elected not to redress.

3.    On September 27, 2023, Hyundai announced a recall of over three million vehicles suffering from the ABS Defect. Because of the fire risk, Hyundai has advised owners to park "outside and away from structures" until a recall repair can be completed.

---

[1] Plaintiff reserves the right to amend or add to the vehicle models included in the definition of Class Vehicles after conducting discovery.

-1-

Class Action Complaint
Case No.: 8:23-cv-2035

4.      Hyundai's plan for recalling the vehicles, however, falls well short of resolving the problem and Hyundai knows it. Indeed, Hyundai has taken pains to minimize the problem, and has done so again in the context of this recall, which does not address the defective ABS module. Hyundai instead attempts to minimize the cost of fixing the vehicles, despite the danger of vehicle fires arising from the vehicles. Nevertheless, Defendants defectively designed and/or manufactured the ABS system with the leaky O-ring, which increases the propensity for failure of the entire ABS system. Plaintiff is informed and believes, and thereon alleges, that the ABS Defect directly affects Plaintiff's and the putative class members' use, enjoyment, safety, and value of the Class Vehicles.

5.      Indeed, Hyundai has been attempting to manage its way out of scrutiny over this problem for years. In February 2022, Hyundai issued a recall for approximately 350,000 Hyundai vehicles with the exact problem described in the latest recall: The Anti-Lock Brake System could malfunction and cause an electrical short, resulting in an engine compartment fire.[2]  In November 2022, Hyundai issued a new recall for additional Santa Fe vehicles.[3] But none of these recalls have addressed the fundamental defect either.  Because the ABS Defect continues to remain even after the proposed recall and repair, Plaintiff brings this action for redress.

## II      JURISDICTION AND VENUE

6.      This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332 (d) because the amount in controversy for the Class exceeds $5,000,000 and many putative class members are citizens of a different state than Defendants.

7.      This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction. This Court has personal jurisdiction over Defendant Hyundai

---

[2] Hyundai Motor Company, ABS Module Recall, https://autoservice.hyundaiusa.com/Campaign188/MicroSiteTemplate/MicroSiteTemplateVINValidate/3718 (last accessed 9/28/2023)
[3] National https://www.nhtsa.gov/press-releases/consumer-alert-hyundai-santa-fe-recall-fire-risk (last accessed 9/28/2023)

-2-

Class Action Complaint
Case No.: 8:23-cv-2035

because it conducted and continues to conduct substantial business in the District, and because it has committed the acts and omissions complained of herein in the District, including the marketing and leasing of the Class Vehicles in this District. Hyundai Motor America also has its headquarters located in this District, in the city of Fountain Valley, California.

8.      Venue as to Defendants is proper in this judicial district under 28 U.S.C § 1391 because Defendants sell a substantial number of automobiles in this District, have dealerships in this District, and many of Defendants' acts complained of herein occurred within this District, including the marketing and leasing of the Class Vehicles to Plaintiff and members of the putative Class in this district. Hyundai Motor America also has its headquarters located in this district.

### III      PARTIES

**A.    Plaintiff Bennion**

9.      Plaintiff Bennion is a resident and citizen of Las Vegas, Nevada.

10.     In or about July 2015, Plaintiff Bennion purchased a new 2013 Hyundai Accent (for the purposes of this section, "the Vehicle") from Henderson Hyundai, an authorized Hyundai dealership in Henderson, Nevada.

11.     Plaintiff decided to purchase her vehicle after considering Hyundai's representations about the vehicle. In particular, Plaintiff spoke with a sales representative at Henderson Hyundai regarding the benefits, features, and attributes of the Vehicle. Plaintiff also reviewed and relied upon the new vehicle "Monroney sticker" when deciding whether to purchase the vehicle.

12.     Plaintiff Bennion uses the Vehicle for personal, family, and/or household uses.

13.     At the time she purchased the vehicle, Plaintiff was not informed of the ABS Defect or the risk of the ABS hydraulic assembly's failure, leading to loss of brake function and potentially fire originating in the engine compartment.

14.     At no time prior to the replacement of the battery, which was performed at

-3-

Plaintiff's expense, had Hyundai informed Plaintiff of the risk of catastrophic failure of the ABS module, leading the automobile to loss of electrical power, vehicle stalling, and potentially fire originating in the engine compartment, in her vehicle.

15.     Plaintiff Bennion's vehicle has not been recalled. She is concerned and fearful regarding the integrity and safety of the vehicle's braking system.

16.     Had Plaintiff Bennion known of the ABS Defect at the time she purchased the Vehicle, she would not have purchased it or would have paid substantially less for it.

17.     Plaintiff Bennion has suffered an ascertainable loss as a result of Hyundai's omissions and/or misrepresentations associated with the ABS Defect and its refusal to correct the Defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**B.    Defendants**

18.     Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, Defendant Hyundai Motor Company ("HMC") is a Korean corporation with its principal place of business located 12 Heolleung-ro Seocho-gu Seoul 06797, Republic of South Korea, and was and now is authorized to do and doing business in the State of California.

19.     Defendant Hyundai Motor America ("HMA") is a corporation which is incorporated in the state of California, and is a citizen of and has its principal place of business in the city of Fountain Valley, California.

**C.    Unknown Defendants**

20.     The true names and capacities of the defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sue such defendants by such fictitious names. Each of the defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein. Plaintiffs will seek leave of Court to amend this Complaint to reflect the true names and capacities of the defendants designated herein as DOES when such identities become known.

-4-

21.     Based upon information and belief, Plaintiff alleges that at all times
mentioned herein, each and every Defendant was acting as an agent and/or employee of
each of the other Defendants, and at all times mentioned was acting within the course and
scope of said agency and/or employment with the full knowledge, permission, and
consent of each of the other Defendants. In addition, each of the acts and/or omissions of
each Defendant alleged herein were made known to, and ratified by, each of the other
Defendants.

### IV    FACTUAL ALLEGATIONS

**A.    The Class Vehicles Suffer from and Unreasonable Safety Defect**

22.     ABS, or anti-lock braking system, is a safety feature in modern vehicles.
ABS prevents the wheels of a vehicle from locking up during heavy braking, which can
help drivers maintain control of their car and avoid accidents.

23.     The Class Vehicles all come equipped with an ABS hydraulic assembly that
share a common design configuration. As illustrated below, the ABS hydraulic assembly
is comprised of three component parts—the ABS control module (or "ABS control
unit"), the ABS hydraulic unit, and the ABS motor—that work in concert to ensure the
proper function of the vehicles' automatic-brake locking system.



Class Action Complaint
Case No.: 8:23-cv-2035



24. As also illustrated below, the ABS hydraulic assembly is mounted in the engine compartment of the Class Vehicles and is connected to the master brake cylinder via four brake lines filled with brake fluid.

25. The ABS control module, also referred to as the hydraulic electronic control unit ("HECU"), is the central brain of a vehicle's anti-lock braking system. It is the electrical component responsible for adjusting braking pressure to ensure that the vehicle's wheels don't skid or hydroplane during inclement weather conditions.

26. The ABS hydraulic unit—also sometimes referred to as the ABS hydraulic pump—controls the brake fluid pressure for each individual road wheel. When the ABS module activates one of the solenoids to shut off or advance pressure through a channel within the block, this action closes one pintle valve at a time within the hydraulic block to either prevent, lock on, or allow applied pressure to each road wheel in turn. The hydraulic unit contains the pump used to generate the pressure required to lock and release each wheel at high-speed intervals. The hydraulic unit also contains the pressure sensor used to monitor the braking pressure applied by the driver.

-6-

27.     The ABS motor is attached to the bottom of the hydraulic unit and is used to drive the pump within the hydraulic unit. The motor is only activated by the ABS module during emergency braking.

28.     Failure or malfunction of any of the ABS hydraulic assembly's components can lead to catastrophic failure of the ABS system, which in turn can cause engine compartment fires, unintended application of the brakes during normal driving conditions, a loss of brake responsiveness to driver brake pedal application, and/or a loss of functionality of ABS system in situations where it's supposed to engage.

29.     Failure or malfunction or malfunction of any of the ABS hydraulic unit's components can also lead to a failure of the electronic stability control ("ESC") or traction control system, which is responsible for keeping the car in control by applying the brakes to one or all of the wheels when the vehicle is trying to skid or slide (approaching a corner too fast).

30.     Failure and malfunction of the ABS hydraulic unit, and the risk thereof, present an unreasonable safety risk to drivers of the Class Vehicles, their passengers, and the public.

**B.     Hyundai's Inadequate Safety Recalls**

31.     On September 27, 2023, Hyundai announced a voluntary safety recall of the Class Vehicles because of an unreasonable safety defect related to the ABS assembly can cause an electrical short and lead to a fire. As result, NHTSA and Hyundai have directed owners of the Class Vehicles to park their vehicles outside and away from homes until their vehicles have been repaired.

32.     Hyundai's recall pinpoints the root cause of the problem as defective O-rings. According to Hyundai, the ABS motor shaft O-ring material formulations may be susceptible to physical changes over time due to varying factors, including vehicle ABS specifications and/or the presence of foreign contaminants in the brake fluid, such as moisture, dirt, and dissolved metals, which could affect sealing strength and result in brake fluid leaking onto the ABS controller printed circuit board ("PCB"), which is

-7-

Class Action Complaint
Case No.: 8:23-cv-2035

located in the PCB. As a result, the vehicle can leak brake fluid on to the ABS controller's printed circuit board, internally causing an electrical short. The electrical short can then generate a fire or loss of ABS function.

33.    While Hyundai recalled all of the affected vehicles, the alleged fix does not address the actual defect, nor does it eliminate the risks created by the leak. Instead, Defendants are merely replacing the fuse to be rated for a lower amperage, which they claim will modulate the electrical current and mitigate fires in the future.

34.    But while Hyundai's proposed fix may mitigate the risk of fires, it does not resolve the ABS Defect itself or eliminate all of its accompanying safety risks. In Hyundai's own words, "certain ABS motor shaft O-ring material formulations" become "susceptible to physical changes over time due to varying factors. These factors include "vehicle ABS specifications and/or the presence of foreign contaminants in the brake fluid, such as moisture, dirt, and dissolved metals, which could affect sealing strength and result in brake fluid leaking onto the ABS controller PCB."[4] Hyundai's supplier of the O-ring changed its material formulation in Korea and the United States, in September 2014 and February 2015, respectively.

35.    Despite the fact that Plaintiff and the other class members are continuing to drive with defective ABS hydraulic assembly that cause a malfunction of the lock braking system, Hyundai's proposed recall fix does not address this problem.

36.    Hyundai's motive is obvious: replacing the underlying ABS module alone costs nearly $2,000 and would require hours of costly labor to repair. The fuse Hyundai is replacing costs just a few dollars and takes only a fraction of an hour to replace.

37.    Nevertheless, the ABS Defect poses an obvious and material safety risk to the operator and passengers of all Class Vehicles. The dangers of a defective brake system are manifest, including increased risk of injury or death. As discussed further herein, numerous owners and lessees of the Class Vehicles have experienced the ABS

---

[4] NHTSA, Part 573 Safety Recall Report, https://static.nhtsa.gov/odi/rcl/2023/RCLRPT-23V651-6950.PDF (Sept. 22, 2023).

Class Action Complaint
Case No.: 8:23-cv-2035

Defect already, and Defendants continue to gamble with the lives and safety of hundreds of thousands of drivers and passengers whose brakes are defective, and for whom failure is only a matter of time.

## C.     Hyundai's Knowledge of the ABS Defect

38.     Defendants have known of the ABS Defect since at least 2011 through (1) their own records of customers' complaints, (2) dealership repair records, (3) records from the National Highway Traffic Safety Administration ("NHTSA"), (4) warranty and post-warranty claims, (5) pre-sale durability testing and part sales, and (6) its earlier investigation of Class Vehicle automobile braking problems, was aware of the ABS Defect.

39.     An important source of field data for Hyundai is the NHTSA's Consumer Complaint Database. This publicly available database contains all motor vehicle-related consumer complaints submitted to NHTSA since January 2000. Consumers submit what is called a "Vehicle Owner Questionnaire" in which they asked to provide information that includes, the make, model, and model year of the vehicle, the approximate incident date, the mileage at which the incident occurred, whether the incident involved a crash or a fire, whether any persons were injured or killed in the incident, the speed of the vehicle at the time of the incident, and a description of the incident along with a description of the vehicle components they believe were involved in the incident. The majority of consumer complaints are submitted online at www.safercar.gov where consumers can input this information directly into the database through their computer. They can also submit complaints by telephone through the Auto Safety Hotline, through submitting a paper Vehicle Owner Questionnaire form, and by mailing consumer letters to NHTSA. This information is then entered into NHTSA's ARTEMIS database where it can be searched and reviewed by the general public and vehicle manufacturers alike, by make, model, model year, and component. NHTSA promotes this database as a valuable consumer information tool.

-9-

Class Action Complaint
Case No.: 8:23-cv-2035

40.      Hyundai routinely monitor the internet for complaints similar in substance to those quoted below. Their customer relations personnel and quality engineers routinely monitor the internet for customer complaints. Further, Defendants' customer relations division regularly receives and responds to customer calls concerning, *inter alia*, product defects. The NHTSA complaints also indicate Hyundai's knowledge of the defect and the danger it poses to passengers and the general public.

Since 2011, at least 206 Class Vehicle owners have reported experiences of loss of braking power and/or an ABS/ESC system malfunction in their vehicles. (*See* NHTSA VOQs, Ex. 1.) Moreover, NHTSA reports that it is aware of 21 vehicle fires in the United States resulting from this defect, as well as 22 additional "thermal incidents, including visible smoke, burning, and melting."[5]

41.      As evidenced by the following small sample of the VOQs below[6], these publicly reported complaints describe numerous experiences wherein the health and safety of the Class Members were placed in jeopardy because of the ABS Defect:

Ozq %17566 SMYXF NI Szr GJW 65965<:7

Htr utsjsyx JQJHYWTSH XYFGNQN Y HTSYWTQ YWFHYNTS HTSYWTQ X XYJR

SMYXF NI Szr gjw 65965<:7

Nshnijsy fyj Ozq 17566

Htsxzr jw Qthfyts HFSTS LF

[jmnhq Nisykh fyts Szr gjw PR MIM9FJ;GZ////

Xzr r fw tk Htr uqfnsy

---

[5] NHTSA, Consumer Alert, Kia and Hyundai Issue Recalls for 3.3.M Vehicles, Advise Owners to Park Outside, https://www.nhtsa.gov/press-releases/consumer-alert-kia-and-hyundai-park-outside#:~:text=Hyundai's%20safety%20recall%20(NHTSA%20ID,2013%20Tucson%2C%202015%20Tucson%20Fuel, [last viewed September 29, 2023.]

[6] The foregoing complaints are reproduced as they appear on the NHTSA website. Any typographical errors are attributable to the original author of the complaint. Emphasis added to original text is denoted by bold and underlining.

-10-

Class Action Complaint
Case No.: 8:23-cv-2035

| MAKE | MODEL | YEAR |
|------|-------|------|
| HYUNDAI | ELANTRA | 2011 |

Class Action Complaint
Case No.: 8:23-cv-2035

TWNLNS FQ JR FN %JS Y T M ^ZS IFN R TYTWX ZXF %IJFW M ^ZS IFN R TYTWX %
ZXF N MF [J%[XN JI %MJ I JFQJWXMN %N M R ^S J\ %[JQTXYJW KTW %\ T%
NXXZJX TS %MJ HFW N \ FX FI [XJI %YT HTS YFHY ^TZ YT UJS F HFXJ FX %
YMJ IJFQJW % TZQI S TY FYYJR UY T KN J%YMJ NXXZJX FX %YMJWJ X S T %
WJHFQQX TW %JW [NHJ GZQQYN X MJWJFWJ YMJ KTQQT \ N S L UWTGQJR X N %
MF [J STYN KN I %MJ I JFQJW K FS I %MTXJ %MFY SJJI T GJ KN J JI 36 .%
XJWN TZX XXZJ %. MJS %GWFPN L %S IJW %MJ [^ HTS IN YN T X E YM FGX F S I %
STS %GX HFXJX %MJ HFW %\ JW JX FS I 4TW QTXJX %V X WJFW YT U YMJW %
QJKY TW %NLMY N %J %GWFPJI F MFWI %XJ JWFQ YN R JX FS I %KJQQX QN PJ %YMJ %
WJFW US I XN KLN NS L TZY 3E ZWN S L FGX HTS IN YN TSX YMJ HFW %\ JW JX QN PJ %
N X F W %\ I %WN JS JS %JMN HQJ YMNX K TS TY TS Q ^ XHFW ^ FX F HTS XZR JW %GZY %
IFS LJWTZX YT YMJWX K YMJWJ X F ^ HTS IJS FYN S TS %MJ %WTFI %
\ MN QJ %GWFPN S L FS I YMJ QJFS L T TS J KN LJ HHZWX FS I 4TW %
X\ JW [N L N HTZI M^I WTUQFS JS I HFZXJ F R FOTW FHHN IJSY %GJHFZXJ %
TK F R JHMFS N FQ FXJ KJY N MF [J TS J R ^T \ WJXJFWHM FS I UTPJS %
YT YMJW %[JQTXYJW \ S JWX FX %JQQ MJ^ MF [J R JS YN JI YMJ^ MF [J %
YMJ FR J UWTGQR FS I YMJW %JFQJW MFX TWIJWJI FS I WJUQFHJI TSJ %
TK YMJ JFW GWFPJ HFQ HFS UJWX YT TQ [J YMJ JWTGQR S %KTWR JI JR ^%
XJW [NHJ FI F HTUT \ IN XTUFJM JI WN G FX JX 4 XJI XTUT QY JFXJ ^ Z TS %
IWN [JX 36 ^XJJY JWN L J N %N M R ^T GF HWFPJI TS J XJW RJWFN ^%
IWN [JW N %N FS KYTU HFWXX MJ %JMN HQJ \ JW JI T W%JXY MJ %JW JWW %
JS I \ FX HTR S LQ QTXJ QJFXJ MF [J %MNX XXZJ FS I LJ JI \ S WTY [N J%
HZXYTR JW % JW [NHJ F FX %JW^ [JW JX F MJI WN G FY GJWX %MFY N MF [J YT%
\ WN J %^TZ NWN WN FY YMJ I JFQJW JW [NX L R ^ ^JMN HQJ FS \ QQ %GJ %
HTTUJWFYN J N S %MNX XXZJ FS I QTT P KTW \ FWI YT %TQZYN S 3. YW%

| MAKE | MODEL | YEAR |
|---|---|---|
|  |  |  |
| HYUNDAI | VELOSTER | 2012 |

%

Ijhjr gjw 86 27568 % MYXF N SZR GJW 65::=596

Htr utsjsyx ?XJW [NHJ GWFPJX %

-12-

1  SMYXF❀N❀%zr gjw%65::=596%

2  Nshnijsy❀Ifyj❀Ijhjr gjw%791❀7568%

3  Htsxzr jw❀Qthfyts%WN LJKNJQI ❀HY%

4  [jmnhgj❀Nijsynknhfyts❀%zr gjw%PR MHY:FJ8HZ////%

5  Xzr r fw-❀tk❀Htr uqfnsy%

6  HWFXMSt%

7  KNWJSt%

8  NSOZWNJX5%

9  IJFYMX5%

10  N❀FR ❀F%[JW^❀HFZYN TZX❀IWN[JW❀\ MT❀X%[JW^❀JFX^❀TS ❀R ^❀GWFPJX❀NYT%
    UWJ [JSY❀\ JFW3❀NHTZQI ❀STY%XYTU❀NS ❀YNR J❀\ MJS ❀F%[JMNHQJ❀NS ❀KWTS Y❀TK%

11  R J❀XZIIJSQ^❀XYTUUJI ❀FS I ❀MFI ❀YT❀YZWS ❀J❀[JS ❀YMTZLM❀NMFI ❀UQJSY^❀TK%
    XUFHJ❀YT❀XYTU❀NN❀MFI ❀YT❀X\ JW [J❀NS ❀KWTS Y❀TK❀FS TYMJW%[JMNHQJ❀

12  GJHFZXJ❀R ^❀GWFPJX❀FWJ❀\ TWS ❀IT\ S ❀FY%<P❀R NQJXDDD❀XTR JYMN S L❀NX%

13  TG [NTZXQ^❀\ WTSL❀\ NM%YMJ❀GWFPJX❀NS ❀F❀7567❀M^ZS IFN❀FHHJS Y❀YMJWJ%

14  SJJIX❀YT❀GJ❀F❀WJHFQQ3❀J❀[JS ❀N❀NKQTTW❀YMJ❀GWFPJ❀UJIFQ❀NNTS TS ❀TS ❀YS ❀Y❀XYTU%
    FS I ❀MJFW❀\ LWNS INS L❀STN XJX3❀/YW%

15  ═══════════════════════════════════════════════════════════

16  **MAKE**                    **MODEL**                    **YEAR**

17

18

19  HYUNDAI                     ACCENT                       2012

20  ──────────────────────────────────────────────────────────

21

22  %
    Ijhjr gjw%771❀756=%  MYXF❀N❀%ZR GJW%666;869>

23  Htr utsjsyx?%XYJJWN S L❀JQJHYWNW N FHFQ%X^XYJR 1❀NS LNSJ%

24  SMYXF❀N❀%zr gjw%666;869>%

25  Nshnijsy❀Ifyj❀Ijhjr gjw%771❀756=%

26  Htsxzr jw❀Qthfyts%XZSWNXJ❀KQ%

27  [jmnhgj❀Nijsynknhfyts❀%zr gjw%]^_Z8QG8JL////%

28  Xzr r fw-❀tk❀Htr uqfnsy%

-13-

Class Action Complaint
Case No.: 8:23-cv-2035

HWFXMⓈt%
KⓃWJ^jx%
NⓈOZWNJX5%
IJFXMYX5%
7569MⓂ^ZSIFNⓍXFSYFⓍKJⓍXUTWY2ⓇGWFPJⓆNLMY4ⓍFGXⓍNLMY4MNQQⓉIJXHJSYⓋHTSYWTQⓍ
QNLMYⓋHFRJⓉSⓍNSⓍ[JMNHQJⓍFSIⓍFKYJWⓍFⓐF^ⓉWⓍ\ⓉSJ[JWⓍZWSJIⓉKK3ⓍYTTPⓈHFWⓍ
YTⓍJFQJWXMNUⓕFSIⓐ FXⓕFXPJIⓍYTⓇ FPJⓕUUTNⓈYRJSYⓍMJ%SJ]YⓏF^ⓕ%YWNFSLQJ%
\NⓂ&J]HQFRFYNTSⓊTNSYⓍQNLMYⓍZWSJIⓉSⓕQTSLⓐ\NⓂFⓍYJJWNⓈLⓐ MJJQⓆⓐ\NⓂⓍ
J]HQFRFYNTSⓊTNSYⓍQNLMYⓕFSIⓍMJⓍXYJJWNⓈLⓐ MJJQⓆGJHFRJⓍQTTXJⓕFYⓍMNⓍⓨRJ3Ⓧ
IWT[JⓇR^XJQKⓍMTRJⓕFSIⓕKYJWⓍUFWPNⓈLⓍMZWSJIⓍ[JMNⓂHQJⓍKKⓉⓍGZYⓍMJⓊSLNⓈJ%
HTSYNⓈZJIⓍYTⓇ FPJⓍMZR RNⓈLⓈⓉNⓀJXⓍⓆNPJⓍXTR JYMNⓈLⓐ FXⓍYNQQⓍWZSSNⓈLⓍ
WJXYFWYJIⓕHFWⓕFSIⓍMJSⓍZWSJIⓉKKⓊSLNⓈJⓕFLFNⓈⓕFSIⓍMJⓈTNⓀJⓍYTUUJIⓐⓍ
\JSYⓂⓈXNⓀJR^MTZXJⓕFSIⓆJXXⓍMFSⓑⓇ NⓈZYJXⓆFYJWⓍMJWJⓥ FXⓕⓆTZIⓇGFSLNⓈLⓐ
TSⓇR^ⓀWTSYⓍⓉTTW2ⓕⓈJNLMGTWⓍMFYⓕWFSⓏUⓍYTNⓈKTWRⓇR JⓇR^HFWⓐ FXⓉSⓍKNJ3ⓐ
HTR UQJYJIⓍWJLZQFWⓇ FNⓈYJSFSHJⓉSⓍMNⓀ%[JMNHQJⓕFSIⓐ YTSQ^ⓔMFIⓔ8⯠555ⓇR NQJX3ⓐ
UQJFXJⓆTTPNⓈYTⓍMNⓀⓍNⓍZFYNTⓈⓍTⓍMFYⓕSTⓉYMJWXⓁTⓍMWTZLMⓍMNⓀⓍ
IJ[FXYFYNⓈLⓍNⓍZFYNTⓈⓍMFYⓍNⓀFHJJIⓍYTIF^3%

| MAKE | MODEL | YEAR |
|---|---|---|
| HYUNDAI | SANTA FE SPORT | 2014 |

42.     Moreover, Defendants should have known about the ABS Defect because its customer relations department, which interacts with authorized service technicians in order to identify potentially widespread vehicle problems and assist in diagnosing vehicle issues, has received numerous reports that the ABS Defect causes a sudden loss of braking power. Hyundai's customer relations department also collects and analyzes field data including, but not limited to, repair requests made at dealerships and service centers, technical reports prepared by engineers that have reviewed vehicles for which warranty coverage is requested, parts sales reports, and warranty claims data.

43.     Hyundai's warranty department similarly reviews and analyzes warranty data submitted by its dealerships and authorized technicians in order to identify defect trends in its vehicles. It dictates that when a repair is made under warranty (or warranty

Class Action Complaint
Case No.: 8:23-cv-2035

coverage is requested), service centers must provide it with detailed documentation. It also requires service centers to save the broken parts in case the dealership is audited, or otherwise acts to verify the warranty repair. For their part, service centers are meticulous about providing this detailed information about in-warranty repairs because Hyundai will withhold payment if the complaint, cause, and correction are not sufficiently described.

44.     As a result of the ABS Defect and the monetary costs associated with attempting to repair it, Plaintiff and the other Class members have suffered injury in fact, incurred damages, and have otherwise been harmed by Defendants' conduct. Accordingly, Plaintiff brings this action to redress their violations of consumer protection laws, and also seek recovery for Defendants' breach of express warranty, breach of implied warranty, and fraudulent concealment.

**D.     Defendants' Sales and Service Agreements with its Authorized Dealers**

45.     Defendants manufactures automobiles but does not sell vehicles directly to consumers; instead, its vehicles are sold exclusively to authorized Hyundai dealerships who, in turn, re-sell them to consumers.

46.     Persons or entities seeking to become an authorized Hyundai dealership must complete and submit a dealer application form provided by Hyundai Motors America.

47.     Authorized Hyundai dealerships in the United States are governed by a detailed Hyundai Motor America Dealer Sales and Service Agreement. (*See* Hyundai Motor America Dealer Sales and Service Agreement, Ex. 2.) This agreement provides that:

> DEALER is an integral part of a network of authorized Hyundai Dealers dedicated to the vigorous and effective promotion and sale of Hyundai Products. Accordingly, DEALER agrees to use its best efforts to effectively promote and sell Hyundai Products to Customers in DEALER's primary market area.
>
> . . .
>
> HMA and DEALER recognize the benefits which may be derived from a comprehensive joint advertising effort by Hyundai Dealers. Accordingly, HMA agrees to assist Hyundai Dealers, including DEALER, in the establishment of a

-15-

cooperative advertising association. DEALER agrees to cooperate with HMA in the formation of such association and, once it is established, to participate actively and to contribute to it in accordance with the by-laws of the association.

48.     As set forth above, Hyundai's authorized dealers are contractually obligated to use best efforts to promote, advertise, and sell Defendants' products to customers, and to take steps to provide service and parts for all Hyundai products, regardless of where purchased, and whether or not under warranty.

## E.     Hyundai's New Vehicle Limited Warranty

49.     All new Hyundai vehicles are sold to the public with factory warranties issued by Hyundai, including a New Vehicle Limited Warranty, corrosion, powertrain, and state and federal emissions warranties. Hyundai's warranties were not intended to benefit the initial dealer that it is in privity of contract with; instead, they were intended to benefit the ultimate consumer of the vehicle and purchasers of the vehicles—whether used or new—are third-party beneficiaries of these contractual warranties.

50.     The Hyundai Warranty Manual for the Class Vehicles expressly provides:

WARRANTOR

Hyundai Motor America (HMA) warrants your new 2019 Hyundai vehicle pursuant to the limited warranties described in this Owner's Handbook.

APPLICABILITY

. . .

The New Vehicle Limited, Anti-Perforation Limited, Federal Emission Performance, Federal Emission Design and Defect, California Emission Control Systems, and Replacement Parts and Accessories Limited warranty coverage described in this handbook apply to the vehicle regardless of a change in ownership, and are transferable to subsequent owners.

The 10 years/100,000 miles Powertrain Limited Warranty is not transferable and applies only to the original owner, as defined under "Original Owner" included in the Powertrain Limited Warranty (Original Owner) section of this Owner's Handbook.

51.     For their part, the authorized Hyundai dealers agree and are obligated to "perform warranty service on each Hyundai Motor Vehicle at the time of predelivery service and when requested by the owner according to the requirements of the Hyundai

-16-

Warranty Policies and Procedures Manual."

52.    Finally, the Hyundai Motor America Dealer Sales and Service Agreement's provision on "Warranties" makes clear that the warranties Hyundai issues with its vehicles are intended for the benefit of the ultimate consumers:

### WARRANTIES ON HYUNDAI PRODUCTS

DEALER understands and agrees that the only warranties that will be applicable to each new Hyundai Product sold to DEALER by HMA will be the written limited warranty or warranties expressly furnished by FACTORY or HMA or as stated in the Hyundai Warranty Policies and Procedures Manual, as it may be revised from time to time. With respect to DEALER, such limited warranties are in lieu of all other warranties, express or implied, including any implied warranty of merchantability or fitness for a particular purpose or any liability for commercial losses based on negligence or strict liability. Except for its limited liability under such written warranty or warranties, neither FACTORY nor HMA assumes any other warranty obligation or liability. DEALER is not authorized to assume any additional warranty obligations or liabilities on behalf of HMA or FACTORY. Any such additional obligations or liabilities assumed by DEALER will be solely the responsibility of DEALER.

53.    Because the sale of Hyundai vehicles from Hyundai to its authorized dealers is meant for the sole purpose of facilitating the sale of these vehicles to the public, including Plaintiff, and because the ultimate purchasers or lessees of the Hyundai vehicles are the intended beneficiaries of the warranties issued by Hyundai that run with the vehicles, Plaintiff and the Class Members are intended third-party beneficiaries to the sale of these vehicles by Hyundai to its authorized dealers and, therefore, are entitled to the application of the third-party beneficiary exception to the privity requirement for the assertion of express and implied warranty claims asserted herein.

### V    TOLLING OF STATUTES OF LIMITATIONS

54.    Defendants' knowing and active concealment and denial of the facts alleged herein act to toll any applicable statute(s) of limitations. Plaintiff and other Class members could not have reasonably discovered the true, latent nature of the ABS Defect until becoming aware of Defendants' related recall announcements.

-17-

Class Action Complaint
Case No.: 8:23-cv-2035

55.     Even today, Defendants have announced a recall "fix" that may mitigate the fire risk associated with the defect but does not address the underlying defective ABS system.

56.     Defendants have had, and continue to have, a duty to disclose to Plaintiff and the other Class members the true character, quality, and nature of the Class Vehicles, including the facts that the Class Vehicles require costly repairs, pose safety concerns, and have a diminished resale value. As a result of Defendants' active concealment, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## VI    CLASS ACTION ALLEGATIONS

57.     Plaintiff brings this action on her own behalf, and on behalf of a nationwide class pursuant to Federal Rules of Civil Procedure, Rule 23(a), 23(b)(2), and/or 23(b)(3) defined as follows:

**Nationwide Hyundai ABS Defect Class:**

All persons or entities who purchased or leased a Class Vehicle from an authorized Hyundai dealership within the United States of America.

Alternatively, Plaintiff seeks to represent the following classes of consumers:

**Nevada Hyundai ABS Defect Class:**

All persons or entities who purchased or leased a Class Vehicle in the state of Nevada from an authorized Hyundai dealership.

58.     Together, these classes will be collectively referred to herein as the "Class." Excluded from the Class are Hyundai, its affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change, or expand the Class definitions based on discovery and further investigation.

59.     **Numerosity:** Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the

-18-

Hyundai's sole possession and obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis alleges, that thousands of Class Vehicles have been sold and leased in states that are the subject of the Class.

60.    **Existence and Predominance of Common Questions of Fact and Law**: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to, whether:

a.  The Class Vehicles were sold with the ABS Defect;

b.  Hyundai's recall is insufficient to fix the ABS Defect;

c.  A reasonable consumer would consider the defect, or its consequences, to be material;

d.  Hyundai's conduct violates the laws and statutes described herein.

61.    **Typicality:** Plaintiff's claims regarding the defect and Hyundai's failure to fully address it are typical of the claims of the Class because Plaintiff purchased her vehicle with the same defect as other Class members, and each vehicle must receive the alleged software reprogramming. Furthermore, Plaintiff and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Hyundai's wrongful conduct by limiting the Class Vehicles' driving range below the advertised distance. Plaintiff advances these same claims and legal theories on behalf of herself and all absent Class Members.

62.    **Adequacy:** Plaintiff adequately represents the Class because her interests do not conflict with the interests of the Class he seeks to represent, she has retained counsel who are competent and highly experienced in complex class action litigation, and she intends to prosecute this action vigorously. Plaintiff and her counsel are well-suited to fairly and adequately protect the interests of the Class.

63.    **Superiority:** A class action is superior to all other available means of fairly and efficiently adjudicating the claims brought by Plaintiff and the Class. The injury suffered by each individual Class member is small when compared to the burden and

Class Action Complaint
Case No.: 8:23-cv-2035

expense of individual prosecution of the complex and extensive litigation necessitated by Hyundai' conduct. It would be virtually impossible for Class members on an individual basis to effectively redress the wrongs done to them. Even if Class members could afford such individual litigation, the courts cannot. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system, particularly where the subject matter of the case may be technically complex. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, individual Class members can be readily identified and notified based on, *inter alia*, Hyundai's vehicle identification numbers, warranty claims, registration records, and database of complaints.

64.    Hyundai has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## VII    CAUSES OF ACTION

**A.    Claims Brought on Behalf of the Nationwide Class**

### COUNT I

### VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT

### (15 U.S.C. § 2301, *et seq.*)

**(By Plaintiff on behalf of the Nationwide Class, or alternatively, the Nevada Class)**

65.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

66.    Plaintiff brings this claim on behalf of herself and on behalf of the Nationwide Class or, alternatively, on behalf of the Nevada Class.

67.    Plaintiff and the Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

-20-

68.    Defendants are suppliers and warrantors within the meaning of 15 U.S.C. §§ 2301(4)-(5).

69.    The Class Vehicles, including Plaintiff's vehicle, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

70.    Defendants' 5-year/60,000-mile new vehicle limited warranty is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

71.    Defendants' 10-year/100,000-mile powertrain limited warranty is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

72.    Hyundai breached its express warranties by:

    a.    selling and leasing Class Vehicles that were in materials and/or workmanship, requiring repair or replacement within the warranty period; and

    b.    refusing and/or failing to honor the express warranties by repairing or replacing the defective O-rings.

73.    Plaintiff and the other Class members relied on the existence and length of the express warranties in deciding whether to purchase or lease the Class Vehicles.

74.    Defendants' breach of its express warranties has deprived Plaintiff and the other Class Members of the benefit of their bargain.

75.    The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit.

76.    Hyundai has been given reasonable opportunity to cure its breach of the written warranties. Alternatively, Plaintiff and the other Class members are not required to do so because affording Defendant a reasonable opportunity to cure its breach of written warranties was, and is, futile.

77.    As a direct and proximate cause of Defendants' breach of the written warranties, Plaintiff and the other Class members sustained damages and other losses in

-21-

an amount to be determined at trial. Defendants' conduct damaged Plaintiff and the other Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorney fees and/or other relief as deemed appropriate.

**B.    Claims Brought on Behalf of the Nevada Class**

**COUNT II**

**VIOLATIONS OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT**

**(Nev. Rev. Stat. § 598.0903, *et seq.*)**

**(By Plaintiff on behalf of the Nationwide Class, or alternatively,**

**the Nevada Class)**

78.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

79.    Plaintiff Bennion (for purposes of this section, "Plaintiff") brings this action on behalf of herself and the Nevada Class against Defendants.

80.    The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), NEV. REV. STAT. § 598.0903, et seq. prohibits deceptive trade practices. Section 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of business or occupation, the person:

- (5) Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith;

- (7) Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model;

- (9) Advertises goods or services with intent not to sell or lease them

-22-

as advertised; or

- (15) Knowingly makes any other false representation in a transaction.

81.    In the course of their business, Defendant concealed and suppressed material facts concerning the defect. Defendant accomplished this by denying and misrepresenting the defect's existence.

82.    Defendants thus violated the Nevada DTPA by, at minimum, representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; advertising the Class Vehicles with the intent not to sell them as advertised; and omitting material facts in describing the Class Vehicles.

83.    Defendants engaged in misleading, false, unfair, and deceptive acts or practices that violated the Nevada DTPA by failing to disclose and actively concealing the nature of the defect.

84.    Defendants owed Plaintiff a duty to disclose the defect's existence because it:

a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that contained a hazardous safety defect; and

b.    intentionally concealed the defect. Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiff, about the safety and reliability of the Class Vehicles.

85.    Plaintiff and the Nevada Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information.

86.    Plaintiff and the Nevada Class Members who purchased or leased the Class Vehicles would not have purchased or leased them at all if the Vehicles' true nature had been disclosed and mitigated or would have paid significantly less for them. Plaintiff and

-23-

the Nevada Class Members also suffered diminished value of their vehicles, as well as lost or diminished use.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (N.R.S. § 104.2314 & 104A.2212)

**(By Plaintiff on behalf of the Nationwide Class, or alternatively, the Nevada Class)**

87.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

88.     Plaintiff brings this Count on behalf of herself and the Nevada Class against Defendants.

89.     Defendants are, and were at all times, relevant "merchants" with respect to motor vehicles under N.R.S. § 104.2104(1) and "sellers" of motor vehicles under N.R.S. § 104.2103(1)(c).

90.     With respect to leases, Defendants are, and at all times were, "lessors" of motor vehicles under N.R.S. § 104A.2103(1)(p).

91.     The Class Vehicles are and were at all relevant times "goods" within the meaning of N.R.S. §§ 104.2105(1) and 104A.2103(1)(h).

92.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law, pursuant to N.R.S. §§ 104.2314 and 104A.2212.

93.     These Class Vehicles, when sold or leased, and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are inherently defective because they pose a serious safety risk to the occupants and are an unreliable means of transportation.

94.      Defendants were provided notice of these issues by and through numerous NHTSA complaints, a NHTSA investigation, letters, customer complaints, and filed lawsuits.

-24-

1    95.    As a direct and proximate result of Defendants' breach of the warranties of
2    merchantability, Plaintiff and the Nevada Class Members have been damaged in an
3    amount to be proven at trial.

4                                    **COUNT IV**
5                        **BREACH OF EXPRESS WARRANTY**
6                        **(N.R.S. § 104.2313 & 104A.2210)**
7        **(By Plaintiff on behalf of the Nationwide Class, or alternatively,**
8                                **the Nevada Class)**

9    96.    Plaintiff and the Class incorporate by reference each preceding and
10   succeeding paragraph as though fully set forth at length herein.

11   97.    Plaintiff brings this Count on behalf of herself and the Nevada Class against
12   Defendants.

13   98.    Defendants are, and were at all times, relevant "merchants" with respect to
14   motor vehicles under N.R.S.§ 104.2104(1) and "sellers" of motor vehicles under N.R.S. §
15   104.2103(1)(c).

16   99.    With respect to leases, Defendants are, and were at all times, "lessors" of
17   motor vehicles under N.R.S. § 104A.2103(1)(p).

18   100.   The Class Vehicles are and were at all relevant times "goods" within the
19   meaning of N.R.S. §§ 104.2105(1) and 104A.2103(1)(h).

20   101.   In connection with the purchase or lease of each one of its new vehicles,
21   Defendants provide an express bumper-to-bumper New Vehicle Limited Warranty
22   ("NVLW") for a period of three years or 36,000 miles, whichever occurs first.
23   Defendants' warranties formed a basis of the bargain that was reached when Plaintiff and
24   other Nevada Class Members purchased or leased their Class Vehicles.

25   102.   Plaintiff and the Nevada Class Members experienced defects within the
26   warranty period. Despite the existence of warranties, Defendants failed to inform Plaintiff
27   and Nevada Class Members that the Class Vehicles contained the ABS Defect.
28   Defendants have also failed to fix the defective ABS components free of charge.

-25-

103.     Defendants breached the express warranty by failing to provide Plaintiff and the Nevada Class with a remedy for the ABS Defect. Defendants have been unable to repair Plaintiff's vehicle. Further, Defendants have confirmed their intention not to repair the ABS Defect.

104.     Finally, because of Defendants' breach of warranty as set forth herein, Plaintiff and the Nevada Class Members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and the Nevada Class Members of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages allow.

105.     Defendants were provided notice of these issues by and through numerous NHTSA complaints, a NHTSA investigation, letters, customer complaints, and filed lawsuits.

106.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiff and the Nevada Class Members have been damaged in an amount to be determined at trial.

## VIII  PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for judgment as follows:

A.     for an order certifying this action as a class action;

B.     for an order appointing Plaintiff Bennion as representative of the Class and counsel of record McCune Law Group, APC, as class counsel;

C.     for an award of equitable relief;

D.     for an award of actual, general, special, incidental, statutory, compensatory and consequential damages on claims for fraud and in an amount to be proven at trial;

E.     for an award of exemplary and punitive damages in an amount to be proven at trial;

F.     for an order enjoining the wrongful conduct alleged herein;

-26-

Class Action Complaint
Case No.: 8:23-cv-2035

1    G.    for costs;

2    H.    for attorneys' fees;

3    I.    for interest; and

4    J.    for such other relief as the Court deems just and proper.

5

6   Dated: October 31, 2023                    Respectfully submitted,

7

8                                    By: */s/David C. Wright*

9                                        David C. Wright
                                         Richards D. McCune
                                         Steven A. Haskins
10                                       Mark I. Richards
                                         Jordan I. Wispell
11                                       **McCUNE LAW GROUP,**
                                         **McCUNE WRIGHT ARÉVALO**
12                                       **VERCOSKI KUSEL WECK BRANDT, APC**
                                         3281 E. Guasti, Road, Suite 100
13                                       Ontario, California 91761
                                         Telephone: 909-557-1250
14                                       Facsimile: 909-557-1275
                                         Email: dcw@mccunewright.com
15                                       Email: rdm@mccunewright.com
                                         Email: sah@mccunewright.com
16                                       Email: mir@mccunewright.com
                                         Email: jiw@mccunewright.com

17
                                         *Attorneys for Plaintiff and the Putative Class*
18

19

20

21

22

23

24

25

26

27

28

-27-

1

## JURY DEMAND

Plaintiff, on behalf of herself and the putative Class, demand a trial by jury on all issues so triable.

Dated: October 31, 2023          By:  /s/David C. Wright

David C. Wright
Richard D. McCune
Steven A. Haskins
Mark I. Richards
Jordan I. Wispell
**McCUNE LAW GROUP,**
**McCUNE WRIGHT ARÉVALO**
**VERCOSKI KUSEL WECK BRANDT, APC**
3281 E. Guasti, Road, Suite 100
Ontario, California 91761
Telephone: 909-557-1250
Facsimile: 909-557-1275
Email: dcw@mccunewright.com
Email: rdm@mccunewright.com
Email: sah@mccunewright.com
Email: mir@mccunewright.com

*Attorneys for Plaintiff and the Putative Class*

-28-

Class Action Complaint
Case No.: 8:23-cv-2035

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing document to be filed on October 31, 2023, with the Clerk of the Court for the United States District for the Central District of California using the Court's electronic filing system, which will send a notice of electronic filing to all attorneys who have appeared in this matter.


*/s/ David C. Wright*
David C. Wright

-29-

Class Action Complaint
Case No.: 8:23-cv-2035